THE STATE EX REL. HAYES, APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Hayes v. Indus. Comm.* (1997), 78 Ohio St.3d 572.]

(No. 95-153—Submitted March 18, 1997—Decided June 11, 1997.)

*Schiavoni, Schiavoni & Bush* and *Thomas Tootle,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Steven P. Fixler,* Assistant Attorney General, for appellee Industrial Commission of Ohio.

*Manos, Pappas, Stefanski & DeFoy Co., L.P.A., Leonard J. Pappas* and *James A. Neff,* for appellee Youngstown Hospital Association.

PFEIFER, J.   It is well settled that the determination of disputed factual situations, including that of PTD and whether the claimant could return to any other employment, is totally within the province and final jurisdiction of the commission, subject to correction by action in mandamus only upon a showing of abuse of discretion.   See *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 172–173, 31 OBR 369, 374, 509 N.E.2d 946, 951; *State ex rel. Kokocinski v. Indus. Comm.* (1984), 11 Ohio St.3d 186, 188, 11 OBR 499, 500, 464 N.E.2d 564, 566.

However, in determining PTD, the commission is required to consider all medical and nonmedical disability factors contained in the record and, in its order, must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision.   *Stephenson; Noll.* "*Noll* quite clearly stands for the proposition that the commission must explain, in its orders, how the *Stephenson* factors, if pertinent, support the commission's determination granting or denying the requested benefits." *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 321, 626 N.E.2d 666, 671.   "The issuance of a writ of mandamus is appropriate where the court finds non-compliance with *Noll,* as such non-compliance is equivalent to an abuse of discretion." *State ex rel. Ranomer v. Indus. Comm.* (1994), 71 Ohio St.3d 134, 137, 642 N.E.2d 373, 376.

Dr. Dillahunt's report constitutes some evidence to support the commission's finding that claimant is medically capable of returning to some sustained remunerative employment of a strictly sedentary nature.   However, a medically based capacity for certain employment is immaterial if claimant's nonmedical disability factors operate to foreclose such employment. *State ex rel. Lawrence v. Am. Lubricants Co.* (1988), 40 Ohio St.3d 321, 322, 533 N.E.2d 344, 346.   As in almost all PTD decisions that are appealed to this court, this case "involve[s] a claimant who retains some medical capacity for work, making the role of nonmedical factors even more critical." *State ex rel. Waddle v. Indus. Comm.* (1993), 67 Ohio St.3d 452, 458, 619 N.E.2d 1018, 1022.

Thus, to adequately justify its decision denying claimant's application for PTD compensation, the commission, in its order, would need to explain how it is that a sixty-two-year-old, fifty-one percent medically impaired claimant with a tenth grade education, who has worked only as a nurse's aide, kitchen helper and

bartender, who has no special training or vocational skills, and who has a severely limited vocational aptitude, including reading at below a third grade level, mechanical reasoning ability in the eight percentile, verbal reasoning and numerical ability in the two percentile, and noncompetitive verbal and language abilities, can realistically return to the job market to do work of a strictly sedentary nature. *State ex rel. Gay*, 68 Ohio St.3d at 321, 626 N.E.2d at 671.

The commission's order of March 4, 1993, explains:

"In accordance with the assessment of Mr. Kontosh, it is found that the claimant's age of 62 would not prevent her from performing such sedentary jobs, nor would her tenth grade education pose as a barrier to her being retrained to do them. Certainly, her past work history as a nurse's aide would be an asset in obtaining a job as either an Outpatient Admitting Clerk or Hospital Admitting Clerk."

This order provides no insight into how the various nonmedical disability factors in this case support the denial of PTD compensation. It does not disclose whether the commission considered claimant's age and education to be vocationally favorable or unfavorable. To the contrary, the phraseology of the order is elusive in this regard, and reveals little more than that claimant is sixty-two years of age, has a tenth grade education, is capable of sedentary work and, therefore, is not permanently and totally disabled. "If, for example, the commission views these factors as assets to retraining, it should say so." *State ex rel. Waddle*, 67 Ohio St.3d at 458, 619 N.E.2d at 1022.

Also, regardless of whether the commission views these factors as assets or as a hindrance to retraining, it should, in this case, explain how the claimant, in light of all nonmedical disability factors, is capable of retraining and entering the job market. At the very least, this would require that the commission give consideration to whether the *combination* of claimant's age, education, lack of special training and vocational skills, and severely limited vocational aptitude present "a barrier to her being retrained."

However, the commission's order is grammatically constructed in a way that avoids correlating the various nonmedical disability factors. The order states only that claimant's "tenth grade education" would not preclude her from being retrained, and mentions claimant's "age of 62" only with reference to her "performing such sedentary jobs." There is no indication that the commission gave any consideration to whether claimant's age, let alone the other disability factors, would combine with her tenth grade education to make retraining unrealistic. Such an inquiry is particularly pertinent in this case because, as the commission noted in its order, "[d]ue to her age, the claimant was not referred to the Rehabilitation Division."

The commission's explanation that claimant's work history as a nurse's aide would be an asset in obtaining a job as an outpatient or hospital admitting clerk provides no additional insight into why claimant should be denied PTD compensation. Even if we were to accept that claimant's prior work history as a nurse's aide is an asset, there is no indication in the commission's order that such fact would offset her other vocational disabilities. Moreover, we would be remiss not to question how the skills acquired as a nurse's aide are transferable to the job of admitting clerk, or how the claimant in this case is suited to work as an admitting clerk when her vocational aptitudes would suggest jobs that do not, in Kontosh's words, deal "so much with data." While such matters are generally within the province of the commission, certain findings, albeit factual, cry out for explanation.

The commission's order is also flawed because it purports to relieve the commission of its responsibilities under *Stephenson* and *Noll,* by entering findings "[i]n accordance with the assessment of Mr. Kontosh." The commission remains the ultimate authority to determine the totality and permanency of the allowed injury. "The commission is not required to accept the factual findings stated in a medical report at face value and, without questioning such, adopt the conclusions as those of the commission. * * * [T]o do so would be tantamount to allowing a physician to determine disability rather than the commission." (Citations omitted.) *State ex rel. Stephenson,* 31 Ohio St.3d at 171, 31 OBR at 373, 509 N.E.2d at 950.

The same holds true with regard to specialized vocational or rehabilitation reports. *State ex rel. Ellis v. McGraw Edison Co.* (1993), 66 Ohio St.3d 92, 94, 609 N.E.2d 164, 166. Thus, as aptly explained in Fulton, Ohio Workers' Compensation Law (1991) 219, Section 9.14:

"Whether it is a medical doctor or a vocational expert who submits an opinion, it is the Industrial Commission and not the outside expert that has the responsibility of determining whether the claimant is disabled. The Industrial Commission must consider the factors that informed the experts' opinions, but the experts cannot usurp the role of the Commission in determining disability." See, also, *State ex rel. Huntley v. Interlake Steel Corp.* (1989), 42 Ohio St.3d 168, 538 N.E.2d 103; *State ex rel. Basham v. Consolidation Coal Co.* (1989), 43 Ohio St.3d 151, 152, 541 N.E.2d 47, 48; *State ex rel. Adkins v. Indus. Comm.* (1986), 24 Ohio St.3d 180, 182, 24 OBR 410, 412–413, 494 N.E.2d 1105, 1108 (Locher, J., concurring).

The remaining question is whether to remand the cause pursuant to *Noll,* allowing the commission to reconsider and properly explain its decision, or to direct the commission to enter an order finding claimant permanently and totally disabled, pursuant to *Gay.*

The commission argues that relief under *Gay* should be rejected because this case does not present the required profile, *i.e.*, where the commission's order has "combined unfavorable vocational evidence with medical evidence that assessed a relatively high degree of physical impairment." We reject this argument because that is exactly the situation in the present case. There is very little about the vocational evidence in this case, other than Kontosh's supplemental opinion, that can be characterized as vocationally favorable. In addition, we have specifically stated that a particular physician, in his reports, "assessed a high (fifty percent) degree of impairment." *State ex rel. Lopez v. Indus. Comm.* (1994), 69 Ohio St.3d 445, 449, 633 N.E.2d 528, 531; *State ex rel. Taylor v. Indus. Comm.* (1995), 71 Ohio St.3d 582, 585, 645 N.E.2d 1249, 1252.

Nevertheless, we find relief under *Gay* to be inappropriate in this case. In *Gay,* we observed that "the commission cited *no evidence* to support its apparent conclusion that [claimant's] nonmedical disability factors are work-amenable, and *all the evidence* which appears in the record indicates that the factors are not vocationally favorable." (Emphasis *sic.*) *Id.,* 68 Ohio St.3d at 322, 626 N.E.2d at 672. In the present case, unlike in *Gay,* the record contains the report of Kontosh, a vocational expert, opining that "based on the allowed conditions, and [claimant's] age, education, and past work experience it is reasonable to accept that this claimant can do any of the jobs suggested in this report." It remains the commission's task, although not an easy one in this case, to correlate Kontosh's findings with claimant's ability to engage in sustained remunerative employment. Of course, the commission may reconsider its conclusion that claimant is not permanently and totally disabled.

For the foregoing reasons, we reverse the judgment of the court of appeals. A limited writ is granted ordering the commission to vacate its order and to proceed in accordance with this opinion.

*Judgment reversed*
*and limited writ allowed.*

MOYER, C.J., and F.E. SWEENEY, J., concur.

DOUGLAS and RESNICK, JJ., concur in judgment.

COOK and LUNDBERG STRATTON, JJ., dissent.

DOUGLAS, J., concurring in judgment. The majority has recited the status of this " * * * sixty-two year old, fifty-one percent medically impaired claimant with a tenth grade education, who has worked only as a nurse's aide, kitchen helper and bartender, who has [absolutely] no special training or vocational skills, and who has a severely limited vocational aptitude, including reading at below a third

grade level, mechanical reasoning ability in the eight percentile, verbal reasoning and numerical ability in the two percentile, and noncompetitive verbal and language abilities * * *." What else needs to be said to afford relief pursuant to *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666? I would grant *Gay* relief.

RESNICK, J., concurs in the foregoing concurring opinion.

LUNDBERG STRATTON, J., dissenting. Because the commission's order is clearly supported by "some evidence," which, as the majority points out, is the legal standard of review, I would affirm the court of appeals.

COOK, J., concurs in the foregoing dissenting opinion.