[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 572.]

THE STATE EX REL. HAYES, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Hayes v. Indus. Comm.*, 1997-Ohio-180.]

*Workers' compensation—Application for permanent total disability compensation—Denial of application by Industrial Commission an abuse of discretion, when--Commission's order vacated and cause remanded for further proceedings, when.*

(No. 95-153—Submitted March 18, 1997—Decided June 11, 1997.)

APPEAL from the Court of Appeals for Franklin County, No. 94APD01-20.

_____

{¶ 1} Claimant-appellant, Johny Hayes, received five separate injuries during the course of and arising out of her employment as a nurse's aide with appellee, Youngstown Hospital Association ("employer"), which were allowed by appellee Industrial Commission of Ohio ("commission"), as follows:

1. February 14, 1977: "Fracture distal tibia right leg into ankle joint with effusion of right ankle strain substernal." Additional allowance for "Baker's cyst right knee," which was surgically removed on August 14, 1978.

2. August 18, 1980: "Contusion of the abdomen (lower left quadrant)."

3. May 28, 1981: "Lumbosacral sprain, left knee sprain and abdominal muscle strain."

4. July 26, 1982: "Left foot and ankle" injury.

5. May 22, 1984: "Low back strain and left ankle strain."

{¶ 2} On April 11, 1989, claimant filed an application for permanent total disability ("PTD") compensation, which the commission granted by order dated August 28, 1990. However, on May 12, 1992, the commission reconsidered and denied claimant's application. On August 24, 1992, claimant filed a complaint in

mandamus, which resulted in the issuance of a writ by the appellate court pursuant to *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245.

{¶ 3} On March 4, 1993, the commission again denied claimant's application for PTD. In its order, the commission noted that claimant was sixty-two years of age, had a tenth grade education, a previous work history as a nurse's aide and bar attendant, and possessed no special training or vocational skills. The order explains further:

"The medical report(s) of Dr.(s) Masternick, Boening, Vamvas, McCloud, and Dillahunt and Messrs. Ruth and Kontosh were reviewed and evaluated. The findings and order are based particularly on the medical report(s) of Dr.(s) Dillahunt and Mr. Kontosh, the evidence in the file and the evidence adduced at hearing.

"***

"Dr. Dillahunt's synthesis of all the medical reports on file is found to be the most persuasive for the reason that he included all the allowed conditions and related the physical restrictions resulting from them. It is found that such physical restrictions would not prevent the claimant from performing the types of jobs noted by Mr. Kontosh in his second report; specifically, those of a clerk, check cashier, answering service operator, credit authorizer or telephone solicitor. In accordance with the assessment of Mr. Kontosh, it is found that the claimant's age of 62 would not prevent her from performing such sedentary jobs, nor would her tenth grade education pose as a barrier to her being retrained to do them. Certainly, her past work history as a nurse's aide would be an asset in obtaining a job as either an Outpatient Admitting Clerk or Hospital Admitting Clerk.

"Based upon the foregoing, it is found that the claimant's industrial injuries do not prevent her from performing some sustained remunerative employment on a sedentary level; therefore, her Application for Permanent and Total Disability Benefits is denied."

**{¶ 4}** Dr. Paul Dillahunt's report, dated September 18, 1990, states that "claimant suffers a 51% permanent partial impairment arising from the combined effects of all allowed conditions of all five industrial accidents *** [and] retains the residual functional capacity to perform sedentary work."

**{¶ 5}** Larry G. Kontosh, the employer's vocational expert, evaluated claimant on November 6, 1991. In his report, dated November 14, 1991, Kontosh reviewed the various medical reports in claimant's file and concluded that such "medical documentation suggests that claimant might be able to do sedentary work." He listed claimant's prior work history as including nurse's aide, kitchen helper and bartender, and noted the exertional level of each to be in the light or medium range. During his evaluation, Kontosh administered a number of vocational tests, making accommodations in the testing procedure for a flare-up of a nonallowed neck and shoulder injury which caused pain in claimant's right dominant shoulder, arm and hand.

**{¶ 6}** Kontosh outlined the results of the tests as follows:

"*** Her [claimant's] score on the Reading subtest was at the below third grade level. * * * Mrs. Hayes was given the Career Ability Placement Survey (CAPS). This is a package of eight subtests which measure occupational aptitudes. * * * All of Mrs. Hayes' timed scores on the eight subtests are below average. Mrs. Hayes demonstrated she has difficulty with cognitive reasoning. Her Mechanical Reasoning score is in the 8 percentile. Her Spatial Relations score is in the 17 percentile. Her Verbal Reasoning score is in the 2 percentile, and her Numerical Ability is in the 2 percentile.

"However, considering her untimed scores, there are two which are at the average range. Her untimed Verbal Reasoning is at the 50 percentile and her Language Usage is also at the 50 percentile. These higher, untimed scores suggest Mrs. Hayes has verbal and language ability, but does not reason at competitive levels.

"Mrs. Hayes demonstrates the ability to follow verbal instructions. However, she showed problems with the understanding of written instructions. This issue suggests reading comprehension problems and is consistent with the above reasoning speed problems."

{¶ 7} Kontosh summarized that claimant's "aptitudes would suggest jobs which deal primarily with things and people and not so much with data." However, he concluded that "[t]he absence of the use of her dominant hand presents a vocational disability which is significant and not adequately overcome by [her] vocational aptitudes." Thus, he opined, claimant "may not be medically stable and *** her apparent present condition precludes totally her ability to work."

{¶ 8} Since the condition involving claimant's right upper extremities was not work-related, the employer asked Kontosh to clarify his report. On February 25, 1993, Kontosh issued a "Supplemental Report" that listed the sedentary occupational titles mentioned in the commission's March 4, 1993 order, and concluded that "based on the allowed conditions, and [claimant's] age, education, and past work experience it is reasonable to accept that this claimant can do any of the jobs suggested in this report." However, no additional testing or retesting was performed prior to Kontosh's supplemental report.

{¶ 9} Claimant filed a motion for reconsideration of the commission's March 4, 1993 order, which the commission denied, and then instituted an action in mandamus, alleging that some evidence does not exist to support the commission's order. She sought a writ ordering the commission to amend its order and enter a finding of PTD. The court of appeals, adopting the referee's report, denied the writ.

{¶ 10} This cause is before the court upon an appeal as of right.

_____

*Schiavoni, Schiavoni & Bush* and *Thomas Tootle*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Steven P. Fixler*, Assistant Attorney General, for appellee Industrial Commission of Ohio.

*Manos, Pappas, Stefanski & DeFoy Co., L.P.A., Leonard J. Pappas* and *James A. Neff*, for appellee Youngstown Hospital Association.

———————————

**PFEIFER, J.**

{¶ 11} It is well settled that the determination of disputed factual situations, including that of PTD and whether the claimant could return to any other employment, is totally within the province and final jurisdiction of the commission, subject to correction by action in mandamus only upon a showing of abuse of discretion. See *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 172-173, 31 OBR 369, 374, 509 N.E.2d 946, 951; *State ex rel. Kokocinski v. Indus. Comm.* (1984), 11 Ohio St.3d 186, 188, 11 OBR 499, 500, 464 N.E.2d 564, 566.

{¶ 12} However, in determining PTD, the commission is required to consider all medical and nonmedical disability factors contained in the record and, in its order, must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision. *Stephenson; Noll*. "*Noll* quite clearly stands for the proposition that the commission must explain, in its orders, how the *Stephenson* factors, if pertinent, support the commission's determination granting or denying the requested benefits." *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 321, 626 N.E.2d 666, 671. "The issuance of a writ of mandamus is appropriate where the court finds non-compliance with *Noll*, as such non-compliance is equivalent to an abuse of discretion." *State ex rel. Ranomer v. Indus. Comm.* (1994), 71 Ohio St.3d 134, 137, 642 N.E.2d 373, 376.

{¶ 13} Dr. Dillahunt's report constitutes some evidence to support the commission's finding that claimant is medically capable of returning to some sustained remunerative employment of a strictly sedentary nature. However, a

medically based capacity for certain employment is immaterial if claimant's nonmedical disability factors operate to foreclose such employment. *State ex rel. Lawrence v. Am. Lubricants Co.* (1988), 40 Ohio St.3d 321, 322, 533 N.E.2d 344, 346. As in almost all PTD decisions that are appealed to this court, this case "involve[s] a claimant who retains some medical capacity for work, making the role of nonmedical factors even more critical." *State ex rel. Waddle v. Indus. Comm.* (1993), 67 Ohio St.3d 452, 458, 619 N.E.2d 1018, 1022.

{¶ 14} Thus, to adequately justify its decision denying claimant's application for PTD compensation, the commission, in its order, would need to explain how it is that a sixty-two-year-old, fifty-one percent medically impaired claimant with a tenth grade education, who has worked only as a nurse's aide, kitchen helper and bartender, who has no special training or vocational skills, and who has a severely limited vocational aptitude, including reading at below a third grade level, mechanical reasoning ability in the eight percentile, verbal reasoning and numerical ability in the two percentile, and noncompetitive verbal and language abilities, can realistically return to the job market to do work of a strictly sedentary nature. *State ex rel. Gay*, 68 Ohio St.3d at 321, 626 N.E.2d at 671.

{¶ 15} The commission's order of March 4, 1993, explains:

"In accordance with the assessment of Mr. Kontosh, it is found that the claimant's age of 62 would not prevent her from performing such sedentary jobs, nor would her tenth grade education pose as a barrier to her being retrained to do them. Certainly, her past work history as a nurse's aide would be an asset in obtaining a job as either an Outpatient Admitting Clerk or Hospital Admitting Clerk."

{¶ 16} This order provides no insight into how the various nonmedical disability factors in this case support the denial of PTD compensation. It does not disclose whether the commission considered claimant's age and education to be vocationally favorable or unfavorable. To the contrary, the phraseology of the

order is elusive in this regard, and reveals little more than that claimant is sixty-two years of age, has a tenth grade education, is capable of sedentary work and, therefore, is not permanently and totally disabled. "If, for example, the commission views these factors as assets to retraining, it should say so." *State ex rel. Waddle*, 67 Ohio St.3d at 458, 619 N.E.2d at 1022.

{¶ 17} Also, regardless of whether the commission views these factors as assets or as a hindrance to retraining, it should, in this case, explain how the claimant, in light of all nonmedical disability factors, is capable of retraining and entering the job market. At the very least, this would require that the commission give consideration to whether the *combination* of claimant's age, education, lack of special training and vocational skills, and severely limited vocational aptitude present "a barrier to her being retrained."

{¶ 18} However, the commission's order is grammatically constructed in a way that avoids correlating the various nonmedical disability factors. The order states only that claimant's "tenth grade education" would not preclude her from being retrained, and mentions claimant's "age of 62" only with reference to her "performing such sedentary jobs." There is no indication that the commission gave any consideration to whether claimant's age, let alone the other disability factors, would combine with her tenth grade education to make retraining unrealistic. Such an inquiry is particularly pertinent in this case because, as the commission noted in its order, "[d]ue to her age, the claimant was not referred to the Rehabilitation Division."

{¶ 19} The commission's explanation that claimant's work history as a nurse's aide would be an asset in obtaining a job as an outpatient or hospital admitting clerk provides no additional insight into why claimant should be denied PTD compensation. Even if we were to accept that claimant's prior work history as a nurse's aide is an asset, there is no indication in the commission's order that such fact would offset her other vocational disabilities. Moreover, we would be

remiss not to question how the skills acquired as a nurse's aide are transferable to the job of admitting clerk, or how the claimant in this case is suited to work as an admitting clerk when her vocational aptitudes would suggest jobs that do not, in Kontosh's words, deal "so much with data." While such matters are generally within the province of the commission, certain findings, albeit factual, cry out for explanation.

{¶ 20} The commission's order is also flawed because it purports to relieve the commission of its responsibilities under *Stephenson* and *Noll*, by entering findings "[i]n accordance with the assessment of Mr. Kontosh." The commission remains the ultimate authority to determine the totality and permanency of the allowed injury. "The commission is not required to accept the factual findings stated in a medical report at face value and, without questioning such, adopt the conclusions as those of the commission. * * * [T]o do so would be tantamount to allowing a physician to determine disability rather than the commission." (Citations omitted.) *State ex rel. Stephenson*, 31 Ohio St.3d at 171, 31 OBR at 373, 509 N.E.2d at 950.

{¶ 21} The same holds true with regard to specialized vocational or rehabilitation reports. *State ex rel. Ellis v. McGraw Edison Co.* (1993), 66 Ohio St.3d 92, 94, 609 N.E.2d 164, 166. Thus, as aptly explained in Fulton, Ohio Workers' Compensation Law (1991) 219, Section 9.14:

"Whether it is a medical doctor or a vocational expert who submits an opinion, it is the Industrial Commission and not the outside expert that has the responsibility of determining whether the claimant is disabled. The Industrial Commission must consider the factors that informed the experts' opinions, but the experts cannot usurp the role of the Commission in determining disability." See, also, *State ex rel. Huntley v. Interlake Steel Corp.* (1989), 42 Ohio St.3d 168, 538 N.E.2d 103; *State ex rel. Basham v. Consolidation Coal Co.* (1989), 43 Ohio St.3d 151, 152, 541 N.E.2d 47, 48; *State ex rel. Adkins v. Indus. Comm.* (1986), 24 Ohio

St.3d 180, 182, 24 OBR 410, 412-413, 494 N.E.2d 1105, 1108 (Locher, J., concurring).

{¶ 22} The remaining question is whether to remand the cause pursuant to *Noll*, allowing the commission to reconsider and properly explain its decision, or to direct the commission to enter an order finding claimant permanently and totally disabled, pursuant to *Gay*.

{¶ 23} The commission argues that relief under *Gay* should be rejected because this case does not present the required profile, *i.e.*, where the commission's order has "combined unfavorable vocational evidence with medical evidence that assessed a relatively high degree of physical impairment." We reject this argument because that is exactly the situation in the present case. There is very little about the vocational evidence in this case, other than Kontosh's supplemental opinion, that can be characterized as vocationally favorable. In addition, we have specifically stated that a particular physician, in his reports, "assessed a high (fifty percent) degree of impairment." *State ex rel. Lopez v. Indus. Comm.* (1994), 69 Ohio St.3d 445, 449, 633 N.E.2d 528, 531; *State ex rel. Taylor v. Indus. Comm.* (1995), 71 Ohio St.3d 582, 585, 645 N.E.2d 1249, 1252.

{¶ 24} Nevertheless, we find relief under *Gay* to be inappropriate in this case. In *Gay*, we observed that "the commission cited *no evidence* to support its apparent conclusion that [claimant's] nonmedical disability factors are work-amenable, and *all the evidence* which appears in the record indicates that the factors are not vocationally favorable." (Emphasis *sic*.) *Id.,* 68 Ohio St.3d at 322, 626 N.E.2d at 672. In the present case, unlike in *Gay*, the record contains the report of Kontosh, a vocational expert, opining that "based on the allowed conditions, and [claimant's] age, education, and past work experience it is reasonable to accept that this claimant can do any of the jobs suggested in this report." It remains the commission's task, although not an easy one in this case, to correlate Kontosh's findings with claimant's ability to engage in sustained remunerative employment.

Of course, the commission may reconsider its conclusion that claimant is not permanently and totally disabled.

**{¶ 25}** For the foregoing reasons, we reverse the judgment of the court of appeals. A limited writ is granted ordering the commission to vacate its order and to proceed in accordance with this opinion.

*Judgment reversed*

*and limited writ allowed.*

MOYER, C.J., and F.E. SWEENEY, J., concur.

DOUGLAS and RESNICK, JJ., concur in judgment.

COOK and LUNDBERG STRATTON, JJ., dissent.

———————————

**DOUGLAS, J., concurring in judgment.**

**{¶ 26}** The majority has recited the status of this "* * * sixty-two year old, fifty-one percent medically impaired claimant with a tenth grade education, who has worked only as a nurse's aide, kitchen helper and bartender, who has [absolutely] no special training or vocational skills, and who has a severely limited vocational aptitude, including reading at below a third grade level, mechanical reasoning ability in the eight percentile, verbal reasoning and numerical ability in the two percentile, and noncompetitive verbal and language abilities * * *." What else needs to be said to afford relief pursuant to *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666? I would grant *Gay* relief.

RESNICK, J., concurs in the foregoing concurring opinion.

———————————

**LUNDBERG STRATTON, J., dissenting.**

**{¶ 27}** Because the commission's order is clearly supported by "some evidence," which, as the majority points out, is the legal standard of review, I would affirm the court of appeals.

COOK, J., concurs in the foregoing dissenting opinion.

January Term, 1997

_____