DECISION
{¶ 1} Relator, Eleftherios Poneris, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying his application for permanent total disability compensation and to enter a new order granting said compensation, or, in the alternative, to enter an order that complies with State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that the order issued by respondent commission complied with the dictates of Noll and Stephenson and that this court should deny the requested writ.
 {¶ 3} Relator filed objections to the decision of the magistrate essentially rearguing issues already adequately addressed in that decision. For the reasons stated in that decision, the objections are overruled.
 {¶ 4} Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ is denied.
Objections overruled; writ denied.
PETREE, P.J., and BRYANT, J., concur.
 DECISION IN MANDAMUS {¶ 5} In this original action, relator, Eleftherios Poneris, asks this court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for permanent total disability ("PTD") and to issue a new order granting the requested compensation pursuant to State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315, or, in the alternative, to issue a writ that complies with State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167.
Findings of Fact:
 {¶ 6} 1. In 1990, Eleftherios Poneris ("claimant") sustained an industrial injury and his workers' compensation claim was allowed for a strained lower back and herniated nucleus pulposus at L4-5 with myelopathy and lumbar disc displacement.
 {¶ 7} 2. Claimant returned to work, and, in 1993, he sustained another injury and his claim was allowed for cervical and thoracic sprain/strain and aggravation of pre-existing degenerative arthritis of the cervical spine. Claimant returned to work.
 {¶ 8} 3. In 1995, claimant was lifting a 300-pound coil of cable when he sustained an aggravation of the herniated disc at L4-5.
 {¶ 9} 4. In 1998, claimant underwent surgery for the allowed disc conditions.
 {¶ 10} 5. In 2000, claimant filed a PTD application. On the application, he stated that he could not read or write, although the form indicates that he completed the eight-page application himself.
 {¶ 11} 6. In support of the application, claimant submitted a two-sentence report from his treating physician, Martin L. McTighe, M.D., stating that he was unable to return to work as a painter because he could not stand for more than 30 minutes at a time or walk more than half a mile.
 {¶ 12} 7. In addition, claimant provided a report from Thomas E. Eliopulos, D.C., who noted claimant's medical history, social history, and present complaints. Upon examination, Dr. Eliopulos stated that claimant could walk on his heels and toes, and that simulated spinal compression and rotation were negative for pain. Dr. Eliopulos listed degrees of range of motion for the spine and leg-raising. He measured the reflexes and circumference of the extremities, and concluded as follows:
 {¶ 13} "Impression: I believe Mr. Poneris suffers with continuing pain and disability of the low back and neck secondary to his work injuries. In addition to the already mentioned diagnoses, he also suffers with post-surgical syndrome and apparent left-sided cervical spine radiculopathy. Although the cervical radiculopathy is more likely due to traumatic compression and subsequent Wallerian degeneration rather than cervical disc disease. Because of apparent trophy, cervical EMG/NCV would be helpful. In any event, he does suffer permanent impairment based as follows;
 {¶ 14} "* * *
 {¶ 15} "These combine for a total of 26% total impairment whole person according to the combined values chart on page 322 of the AMA Guides to the Evaluation of Permanent Impairment, 4th Edition.
 {¶ 16} "When considering disability, Mr. Poneris' level of education, the language barriers, as well as his permanent injury, it is my opinion that his chances for successful rehabilitation and integration into the work force are practically impossible."
 {¶ 17} 8. In February 2001, claimant was examined on behalf of the commission by James T. Lutz, M.D., who reviewed the medical history, present complaints, and daily activities, such as outdoor walks, driving a car, cooking, doing dishes, and light housework. Dr. Lutz observed the following upon examination:
 {¶ 18} "PHYSICAL EXAMINATION: Revealed a well-developed male who stood 5' 9", weighed 185-pounds with a blood pressure of 110/66, pulse of 72, and respiratory rate of 14. The claimant arose from a seated position with modest difficulty and entered the examination room with a slightly stiffened gait favoring the right side. Examination of the neck revealed no gross structural deformities, swelling, signs of atrophy, or discoloration. Tenderness was noted on the right side posteriorly from the midregion to the base of the neck. Deep tendon reflexes of the upper extremities were 2+ and symmetrical and there were no neurosensory deficits. Manual muscle testing of the neck and shoulder musculature was excellent at 5/5. Range of motion studies were as follows: Flexion 50 degrees, extension 30 degrees, right lateral flexion 30 degrees, left lateral flexion 30 degrees, right rotation 50 degrees and left rotation 70 degrees. Examination of the thoracic spine revealed normal kyphosis with no areas of tenderness or spasm. The claimant had full range of motion with 30 degrees of rotation in either direction. Examination of the low back revealed mild loss of lordotic curvature and a level pelvis. There was a well-healed 6.0-centimeter surgical scar over the midline at the lumbosacral junction. Tenderness was noted over the right lumbosacral area without evidence of spasm. Deep tendon reflexes of the lower extremities were 2+ and symmetrical with the exception of the right ankle, which was 1+. Manual muscle testing of the extensor hallices was marked with give-way responses. Decreased sensation was noted over the right lateral calf region. Straight leg raising was achieved at 40 degrees in both the sitting and supine positions with elevation of the right leg causing right-sided low back pain and pulling, as well as positive radicular signs to the right mid-calf region. Elevation of the left leg elicited an unrelated pain of the left hip with no complaints related to the low back. The claimant was able to heel and toe walk with minimal difficulty, but could only perform a small fraction of a normal squat. Range of motion studies were as follows: Flexion 15 degrees, extension 10 degrees, right lateral flexion 15 degrees and left lateral flexion 10 degrees."
 {¶ 19} In his conclusion, Dr. Lutz stated that claimant had reached maximum medical improvement with regard to each of the allowed conditions. With respect to percentages of impairment, he stated:
 {¶ 20} "Reference is made to the Fourth Edition of the AMA Guides Revised in arriving at the following impairment assessment. * * * Combining 10+5 the claimant warrants a 15% whole person impairment."
 {¶ 21} In regard to claimant's physical capacities, Dr. Lutz referred to an attached form, on which he marked the following conclusions based on the allowed conditions:
 {¶ 22} "(X) This claimant is capable of physical work activity as indicated below.
 {¶ 23} "() `SEDENTARY WORK'
 {¶ 24} "Sedentary work means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 {¶ 25} "(X) `LIGHT WORK'
 {¶ 26} "Light work means exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." (Emphasis sic.)
 {¶ 27} No marks were placed next to the medium or heavy categories.
 {¶ 28} 9. A vocational report was submitted on behalf of the commission by Michael T. Farrell, Ph.D., who opined that claimant's age would not affect employability, that his education was limited, and that his alleged lack of facility in English would cause significant difficulty in performing clerical work or engaging in rehabilitation courses. Dr. Farrell noted that claimant had performed skilled work as an industrial painter but that those skills were not transferable outside the painting industry. Dr. Farrell opined that claimant could perform work such as a quality control inspector, proof machine operator, automobile locator, and cashier. Dr. Farrell noted, however, that claimant had disincentives to return to employment including his lack of interest in rehabilitation and his receipt of social security benefits.
 {¶ 29} 10. On May 9, 2001, the PTD application was heard by a staff hearing officer for the commission, resulting in an order denying compensation:
 {¶ 30} "The claimant was examined by Dr. Lutz at the request of the Industrial Commission with respect to the allowed orthopedic conditions in the claims. Dr. Lutz opined that the claimant has a 15% whole person impairment considering the allowed orthopedic conditions. Dr. Lutz noted on the physical strength rating form attached to his medical report that the claimant is capable of performing light-duty work.
 {¶ 31} "An employability assessment of the claimant was performed by Dr. Farrell at the request of the Industrial Commission. Dr. Farrell opined that considering the residual functional capacities as expressed by Dr. Lutz, the claimant has the following employment options: check cashier, automobile locator, surveillance system monitor, proof machine operator, and quality control inspector. Dr. Farrell noted the claimant's age of 57 and stated he is categorized as a person of middle age. Dr. Farrell opined that the claimant's age would not affect employability. He further noted that the claimant's age would not affect employability. He further noted that the claimant has a 6th grade education which he received in his native country of Greece. Dr. Farrell considered that the claimant described himself as being non-fluent in English. Dr. Farrell opined that these factors would pose serious difficulty for rehabilitation and/or functioning in entry level clerical positions. Dr. Farrell analyzed the claimant's work history and noted that he has worked predominantly as a painter. Dr. Farrell opined that the claimant did not acquire any transferable work skills outside of that industry.
 {¶ 32} "The Staff Hearing Officer finds that the claimant is unable to return to his former position of employment as a result of the allowed conditions in the claims. The Staff Hearing Officer further finds that the claimant is capable of performing light-duty employment and sedentary employment based on the medical report and opinion of Dr. Lutz. The Staff Hearing Officer further finds that the claimant has the following employment options based on his residual functional capacities: check cashier, automobile locator, surveillance system monitor, proof machine operator, and quality control inspector. The Staff Hearing Officer finds that the claimant's age of 57 would not affect his ability to be employed. The Staff Hearing Officer further finds that the claimant's illiteracy in English and limited 6th grade education obtained in his native country of Greece are barriers which would restrict his ability to participate in rehabilitation programs and function in entry level clerical positions. However, the Staff Hearing Officer finds that the claimant would be capable of performing entry level, sedentary and light-duty employment in occupations not requiring clerical abilities or the ability to converse in English. The Staff Hearing Officer further finds that while the claimant worked in a skilled occupation as a painter, he did not acquire any transferable work skills to other occupations. Nevertheless, the Staff Hearing Officer finds that the claimant would still be capable of accessing entry-level unskilled occupations within his physical capabilities. Considering the claimant's age, education, and work experience in conjunction with his physical capabilities and limitations due to the allowed conditions, the Staff Hearing Officer finds that the claimant is able to perform the employment options noted in the vocational report of Dr. Farrell. Accordingly, the Staff Hearing Officer finds that the claimant is able to engage in sustained remunerative employment.
 {¶ 33} "After full consideration of the issue it is the order of the Staff Hearing Officer that the Application filed 11/06/2000, for Permanent and Total Disability Compensation, be denied.
 {¶ 34} "This order is based on the medical report of Dr. Lutz and the vocational report of Dr. Farrell."
 {¶ 35} 11. In September 2001, claimant filed a request for reconsideration with an MRI report from June 2001 and a July 2001 medical report from John M. Roberts, M.D., who opined that claimant's lower back problems were potentially treatable with a surgical fusion at L4-5 and L5-S1.
 {¶ 36} 12. The commissioners unanimously refused reconsideration.
Conclusions of Law:
 {¶ 37} In this original action in mandamus, claimant argues that the commission abused its discretion in denying PTD compensation. First, claimant contends that the commission failed to cite objective medical evidence as required by Ohio Adm. Code 4121:3-34(D)(3)(d). Second, claimant argues that the commission failed to provide an adequate explanation of its rationale as required by Noll, supra.
 {¶ 38} Several established principles govern the court's review of the issues. First, the commission, as the finder of fact, has sole discretion to evaluate the credibility and weight of evidence. See, e.g., State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18
(stating that issues of weight and credibility of evidence lie outside the scope of mandamus inquiry); State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165, 169 (stating that "questions of credibility and the weight to be given evidence are clearly within the commission's discretionary powers of fact finding"); State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575, 577 (reiterating that the commission has exclusive authority to evaluate evidentiary weight and credibility); State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373,376 (stating that the commission alone is responsible for evaluating evidentiary weight and credibility).
 {¶ 39} The issue before the court in mandamus is whether the commission cited "some evidence" to support its decision and provided a brief explanation of its rationale. Noll; Stephenson, supra. However, medical reports may be excluded from evidentiary consideration. A medical report based on non-allowed conditions, even in part, is not evidence on which the commission may rely. State ex rel. Shields v. Indus. Comm. (1996), 74 Ohio St.3d 264, 268. Also, the commission may not rely on a physician's opinion that is based on non-medical factors such as a claimant's education, age, vocational skills, work history, etc. Id.; see, also, State ex rel. Catholic Diocese of Cleveland v. Indus. Comm. (1994), 69 Ohio St.3d 560. Further, a medical report cannot constitute "some evidence" if it is internally inconsistent or fatally ambiguous. State ex rel. Lopez v. Indus. Comm. (1994), 69 Ohio St.3d 445; State ex rel. Malinowski v. Hordis Bros., Inc. (1997), 79 Ohio St.3d 342; State ex rel. Chrysler Corp. v. Indus. Comm. (1998), 81 Ohio St.3d 158.
 {¶ 40} In regard to PTD applications, the Oho Supreme Court has observed that the percentage assessment of impairment has limited usefulness because it does not tell the finder of fact what the claimant can do in terms of functional activities in the workplace. Although the commission may consider the percentage of impairment, it must base its determination of medical capacity on what claimant can and cannot do, functionally, in the workplace. State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, 85; State ex rel. Koonce v. Indus. Comm. (1994), 69 Ohio St.3d 436.
 {¶ 41} The definition of "light" work used by Dr. Lutz is the definition as established at Ohio Adm. Code 4121-3-34(B)(2)(b). The definition by its terms encompasses a range of different jobs. For example, some light jobs may involve lifting less than two pounds but are classified as "light" because there is constant reaching. Other jobs that require no lifting may be classified as "light" work because the job requires more than occasional standing. Still other jobs may be classified as "light" work because they require lifting up to 20 pounds occasionally.
 {¶ 42} In the present action, claimant argues that the commission failed to cite "objective medical evidence" to support its decision. Specifically, claimant argues:
 {¶ 43} "* * * 1) Neither a physician's opinion on percentages nor physical strength can be considered objective medical findings of impairment. See, e.g. State ex rel. Lopez v. Indus. Comm. (1994),69 Ohio St.3d 445, 449. 2) Any subjective assertions regarding percent, physical ability, etc. cannot be considered as evidence unless the Commission supports reliance on those opinions through citation to objective medical findings which those opinions. See, e.g., State ex rel. Hayes v. Indus. Comm. (1997), 78 Ohio St.3d 572, 57. 3) No discussion of Relator's medical condition or any citation to objective medical findings exists at any other place in the Commission's order. [Sic.] * * *" (Relator's brief at 8.)
 {¶ 44} However, although claimant contends that neither a physician's opinion on percentages nor his opinion on physical strength are objective medical findings with relevance to the extent of impairment, the case cited for this proposition does not support it. In Lopez, supra, the court stated several propositions of law, including the following: that the length of the medical examination does not render a physician's report inherently unreliable; that the court will not address in mandamus arguments relating to a physician's medical abilities; that an "equivocal" report is one in which the physician offers more than one opinion on a crucial issue; and that, due to internal inconsistency, a physician's report cannot be "some evidence" when the doctor assessed a 50 percent degree of impairment and then concluded that claimant could return to heavy labor. Lopez, supra.
 {¶ 45} The magistrate finds no defect in Dr. Lutz's report that would remove it from evidentiary consideration. His report sets forth the claimant's medical history and current complaints. Dr. Lutz described in detail his clinical observations upon examination. He stated conclusions, including his medical opinion that claimant could perform work in the light category activity based on the medical history and examination, and he also stated an opinion as to claimant's percentage of whole-body impairment. There is nothing in the report to suggest that Dr. Lutz's findings and conclusions were not objective.
 {¶ 46} Claimant appears to argue that the report is defective because Dr. Lutz did not discuss how and why his examination findings led him to conclude that claimant could perform light work. Further, claimant suggests that Dr. Lutz's report was defective as a matter of law because he did not give more detail about the work capacity, delineating exactly which types of jobs in the light category claimant was capable of performing. Also, claimant contends that Dr. Lutz's medical conclusions are not supported by his clinical findings, that Dr. Lutz's clinical observations are fatally inconsistent with his medical opinions as a matter of law.
 {¶ 47} First, the magistrate notes that the amount of detail and explanation in a medical report goes to its credibility and weight, not its admissibility. The brevity of a medical report does not disqualify it from evidentiary consideration. E.g., Lopez, supra. Thus, the lack of additional description of work capacity does not require the exclusion of Dr. Lutz's report. The report need not be removed from evidentiary consideration because Dr. Lutz simply stated findings and conclusions without setting forth an exposition of how and why those findings led to those conclusions. See, generally, State ex rel. Young v. Indus. Comm. (1997), 79 Ohio St.3d 484; State ex rel. Consolidation Coal Co. v. Indus. Comm. (1997), 78 Ohio St.3d 176.
 {¶ 48} Second, Dr. Lutz stated, albeit through a checklist, that claimant could perform physical work activity within the light category, and his report defined the term "light" work. Thus, contrary to claimant's assertion, Dr. Lutz's opinion did not consist solely of an assessment of percentage of impairment. The magistrate rejects the contention that the commission, by relying on Dr. Lutz's report, placed undue emphasis on claimant's percentage of impairment as opposed to the physical capacity for work.
 {¶ 49} In addition, the magistrate rejects the contention that the commission has a legal duty to require its medical specialists to provide more than an opinion of the claimant's work category when rendering an opinion with respect to PTD. Although it would be far better for a physician to give more detail as to the types of activities the claimant can perform, the magistrate concludes that an identification of one of the categories provided in the Ohio Administrative Code is minimally sufficient to support a finding of functional capacity by the commission. That is, the magistrate acknowledges that the commission's specialist did not use a work-capacity form, such as those seen in other cases, that provide spaces for indicating specific restrictions on the amount of time that the claimant can sit, stand, bend, etc. Nevertheless, while such details are desirable, claimant cites no authority for the proposition that a more detailed list of restrictions and capacities is mandatory for a medical report to constitute "some evidence."
 {¶ 50} As to whether the particular clinical findings set forth by Dr. Lutz are medically consistent with his ultimate opinion, the magistrate is mindful that the court in mandamus may not "second guess" the medical correctness of a physician's opinion. See, e.g., Young; Consolidation Coal, supra. As in Lopez and other cases cited above, the court may bar a medical report from constituting "some evidence" where the doctor has relied on non-medical factors or has set forth patently inconsistent statements. However, in the absence of such defects, the question of whether a doctor's evaluation of work capacity appears too low or too high, based on the clinical findings recited, is a matter for the commission to decide when evaluating the persuasiveness of the evidence. See, e.g., Young; Consolidated Coal; Pass, supra.
 {¶ 51} The magistrate finds no patent inconsistency in Dr. Lutz's report that would remove it from evidentiary consideration. Nor is there any indication that Dr. Lutz lacked objectivity. In sum, the magistrate concludes that claimant has not demonstrated an abuse of discretion in the determination of claimant's functional work capacity.
 {¶ 52} Claimant also argues that the vocational factors absolutely preclude the performance of light work, with no discretion for the commission to find otherwise, and that the commission cited no evidence to support claimant's vocational ability to perform light work. With respect to this argument, the magistrate notes that the commission relied heavily on the opinion of Dr. Farrell, who indicated that there were entry-level, unskilled light jobs that claimant could perform within his vocational factors.
 {¶ 53} The magistrate sees no reason that the commission would be barred from relying on Dr. Farrell's opinion. That is, Dr. Farrell's vocational evaluation constitutes some evidence on which the commission may rely. Further, the commission did not abdicate its responsibility by merely adopting a vocational opinion without discussion. Cf. State ex rel. Hayes v. Indus. Comm. (1997), 78 Ohio St.3d 572. In the subject order, the commission discussed each of the factors briefly, noting the specific points on which it agreed with Dr. Farrell. For example, the commission accepted claimant's self-description of lacking fluency in English, and it viewed that factor as prohibiting clerical employment and jobs requiring fluency in speaking English, but the commission did not find that it barred employment entirely. While other finders of fact might view the language difficulties as posing a complete bar to the labor market, the magistrate cannot conclude that the commission was required to make that finding of fact, given that claimant's language limitations had nonetheless permitted sufficient communication to learn skilled work on the job and perform work at various work sites for different employers over the years. See, generally, Burley; Teece; Bell; Pass, supra.
 {¶ 54} In regard to claimant's age, the commission found that the age of 57 years was not a positive or negative factor. The Ohio Supreme Court has held that the commission may view the ages of 51 or 52 years as a young age that is an asset rather than a hindrance. State ex rel. Miller v. Indus. Comm. (1996), 76 Ohio St.3d 590; State ex rel. Ellis v. McGraw Edison Co. (1993), 66 Ohio St.3d 92. Therefore, the commission was within its discretion to view the age of 57 as a neutral factor for light employment.
 {¶ 55} In regard to work history, the commission accepted that claimant's skills were not transferable but concluded that claimant could perform entry-level work of an unskilled nature. Although the combination of factors is not particularly persuasive to the magistrate, the court is not permitted to substitute its judgment for the commission's. See State ex rel. Mobley v. Indus. Comm. (1997), 78 Ohio St.3d 579, 584; see, also, State ex rel. King v. Trimble (1996), 77 Ohio St.3d 58, 63 (stating that although the evidence was "not particularly compelling to us," the court would not substitute its judgment for the commission's).
 {¶ 56} Moreover, it is important to note that claimant is not limited to sedentary work but is medically capable of performing jobs in the light category. This ability to perform light work opens more options to him than a restriction to sedentary work, and it makes the lack of language skills less crucial for employment. Moreover, Dr. Farrell identified light jobs that he believed claimant can perform within his vocational capacity, and the commission was within its discretion to rely on Dr. Farrell's expertise. Accordingly, the magistrate concludes the commission cited some evidence to support its conclusions and provided a brief explanation as required by Noll, supra.
 {¶ 57} Therefore, the magistrate recommends that the court deny the requested writ of mandamus.