DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Edward Steele, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation and to issue an order that grants relator's application for PTD compensation. Alternatively, relator seeks a limited writ of mandamus that remands the matter to the commission for a new hearing concerning relator's PTD application.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, which included findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate concluded that the commission did not abuse its discretion when it denied relator's PTD application. Absent an abuse of discretion, the magistrate recommended denial of relator's request for a writ of mandamus.
 {¶ 3} Relator objects to the magistrate's decision and raises five objections for our consideration:
1) Where an Injured Worker Suffers Restrictions Which Present Significant Barriers to His Reemployment, the Commission Must Consider Whether His Vocational Profile Provides Skills Which Would Allow Him to Overcome Those Barriers and Reenter the Workforce. The Commission Cannot Deny PTD in Such a Circumstance Where It Finds All Non-Medical Factors As Negative or Neutral and Finds No Positive Factors Which Would Assist The Injured Worker's Transition Into Work Within His Restrictions.
2) Where an Injured Worker's Medical Restrictions Are Severe, if Vocational Factors Preclude Retraining and Provide No Transferable Skills, the Commission Abuses Its Discretion By Finding the Claimant Capable of Transitioning to Restricted Work as per State ex rel. Hayes v. Indus. Comm. (1997),78 Ohio St.3d 572.
3) The Commission Cannot Blindly Accept the Conclusions of a Vocational Evaluator. Where the Jobs Suggested by a Vocational Evaluator Defy Common Sense and/or Where The Jobs Indicate that the Evaluator Overlooked Essential Limitations, Those Jobs Are Not "Some Evidence" Upon Which the Commission May Rely.
4) While the Commission Is Not Required to List Jobs an Injured Worker May Perform, When the Commission Relies on a List of Jobs which Common Sense Indicates the Individual Cannot Perform, the Commission's Vocational Evaluation is Grounds for Mandamus.
5) "Sedentary Work" Requires Repetitive Use of an Individual's Upper Extremities. Consequently, if an Individual Cannot Repetitively Use His/Her Upper Extremities He/She Cannot Perform "Sedentary Work."
 {¶ 4} Although relator raises five objections, these objections essentially resolve to the following issues: (1) whether there is "some evidence" to support the commission's order to deny PTD compensation; and (2) whether the magistrate erred when she concluded that the commission's order did not constitute an abuse of discretion.
 {¶ 5} "In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." State ex rel. Noll v. Indus. Comm.
(1991), 57 Ohio St.3d 203, syllabus. Here, the staff hearing officer ("SHO") expressly stated that her order was "based upon the medical reports of Dr. Lutz and Dr. Hogya, the estimated functional abilities form completed by Dr. Carothers, and the vocational report of Mr. Shane." (SHO order of Feb. 27, 2004.) Furthermore, the SHO explained her reasoning underlying the order to deny relator's application for PTD compensation.
 {¶ 6} When determining an application for PTD compensation, the relevant inquiry is a claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693, 695. Such an inquiry requires the commission to review all the evidence in the record, including physicians' reports and opinions. State ex rel.Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167, 170. Moreover, "[t]he commission must also review any evidence relative to the claimant's age, education, work record, psychological or psychiatric factors if present, and that of a sociological nature." Id. Furthermore, "[t]he commission should consider any other factors that might be important to its determination of whether this specific claimant may return to the job market by utilizing her past employment skills, or those skills which may be reasonably developed." Id. "[A] claimant'smedical capacity to work is not dispositive if the claimant's age, experience, education, etc., foreclose the claimant's employability." State ex rel Gay v. Mihm (1994),68 Ohio St.3d 315, 321. (Emphasis sic.)
 {¶ 7} The Supreme Court of Ohio has also instructed:
Reviewing courts must not micromanage the commission as it carries out the business of compensating for industrial/occupational injuries and illness. The commission is the exclusive evaluator of evidentiary weight and disability. Moreover, review of a commission order in mandamus is not denovo, and courts must defer to the commission's expertise in evaluating disability, not substitute their judgment for the commission's. Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion.
State ex rel. Mobley v. Indus. Comm. (1997),78 Ohio St.3d 579, 584. (Citations omitted.)
 {¶ 8} Here, Dr. Hogya opined that, although relator had significant limitations with the use of his upper extremities, relator was capable of squatting; relator had excellent biceps strength; relator maintained adequate fine manipulation that would enable him to perform assembly work of light parts that weighed less than five pounds; and relator had no limitations with regard to sitting, standing or walking as related to the allowed conditions. Dr. Hogya also opined that relator could participate in activities such as dispatching, or using a headset or speaker phone.
 {¶ 9} In a physical strength rating, Dr. Lutz opined that relator is capable of "sedentary work" provided there is no repetitive use of the upper extremities and no reaching over chest height.
 {¶ 10} Dr. Carothers, relator's physician, opined that relator was permanently and totally disabled. However, Dr. Carothers also opined in a functional abilities form that relator could frequently lift one to ten pounds, and he frequently could bend. Dr. Carothers further opined that relator occasionally could lift 11 to 20 pounds, and he occasionally could kneel, crawl, and climb stairs. Dr. Carothers also opined that relator was capable of sedentary activity.
 {¶ 11} Based upon the opinions of Dr. Lutz and Dr. Hogya, the SHO found that relator was capable of sedentary work with additional restrictions that relator avoid repetitive use of the upper extremities and avoid over-chest-height reaching. The SHO also found Dr. Carother's opinion was consistent with relator's ability to perform sedentary employment.
 {¶ 12} J. Michael Shane, an employability assessor, opined, among other things, that: (1) relator's age in an of itself would not affect relator's ability to meet the basic demands of an entry-level position; (2) based upon his education and work history, relator would be able to acquire academic or other skills necessary to perform entry-level sedentary or light jobs, and (3) selective community-based placement programs would be advisable.
 {¶ 13} In her analysis of nonmedical factors, the SHO found that relator's age did not prevent him from adapting to new work rules, processes, methods, procedures, and tools involved in a new occupation. The SHO also found that relator's work history, in and of itself, did not prevent him from meeting the demands of entry-level occupations. The SHO did, however, find that relator's age would limit relator's participation in formal academic remediation programs and that relator's work history did not provide him with transferable work skills to other occupations.
 {¶ 14} The SHO ultimately found that:
Considering the injured worker's age, occupation and work experience in conjunction with his ability to perform restricted sedentary employment * * * [relator] would be able to perform the occupations noted in the vocational report of Mr. Shane, such as: rag inspector, high density press laborer, filter machine tender, offset press operator II, filling machine operator, strip cutting machine operator, blow molding machine operator, box lining machine feeder, and automatic nailing machine feeder.
(SHO order of February 27, 2004, at 3.)
 {¶ 15} Here, the SHO found that relator's nonmedical disability factors did not foreclose relator's employability. In her order, the SHO correlated relator's age, occupation, and work experience with Shane's vocational report to conclude that relator was able to engage in sustained remunerative employment. By finding that relator's age did not prevent him from adapting to new work rules, processes, methods, procedures, and tools involved in a new occupation, the SHO found by implication that relator was able to adapt to new work rules, processes, methods, procedures, and tools that were involved in a new occupation. By finding that relator's work history, in and of itself, did not prevent him from meeting the demands of entry-level occupations, the SHO found by implication that relator, a high school graduate, was able to meet the demands of entry-level occupations. See, generally, State ex rel. Jackson v. Indus.Comm. (1997), 79 Ohio St.3d 266, 270 (construing State ex rel.Waddle v. Indus. Comm. [1993], 67 Ohio St.3d 452, and State exrel. Pierce v. Indus. Comm. [1997], 77 Ohio St.3d 275) (stating that Waddle and Pierce hold that the commission must "specify the extent to which age and employment history may impede or promote a claimant's reemployment prospects").
 {¶ 16} Accordingly, based upon our review, we hold that there is "some evidence" to support the commission's denial of relator's application for PTD compensation. Because there is "some evidence" to support the SHO's order, the commission did not abuse its discretion by denying relator's PTD application.
 {¶ 17} For the foregoing reasons, we therefore adopt the magistrate's decision as our own, including the findings of fact and conclusions of law, with the following exception. In her fourth finding of fact, the magistrate found that Dr. Hogya opined that relator had reached maximum medical improvement ("MMI"). Based upon our review, we do not find that Dr. Hogya expressly opined that relator reached MMI.[1]
 {¶ 18} Accordingly, we overrule relator's objections to the magistrate's decision. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus, and also deny relator's alternative request for a limited writ of mandamus.
Objections overruled; writ denied.
Brown, P.J., and Sadler, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Edward Steele, : Relator, : v. : No. 04AP-606 :
Industrial Commission of Ohio and : (REGULAR CALENDAR) Conway Transportation Services, : Respondent :
 MAGISTRATE'S DECISION Rendered on December 9, 2004 Harris Burgin, L.P.A., and Jeffrey W. Harris, for relator.
Jim Petro, Attorney General, and Charissa D. Payer, for respondent Industrial Commission of Ohio.
Dinsmore Shohl, LLP, Christopher A. Benintendi andJennifer L. Chesser, for respondent Conway Transportation Services.
 IN MANDAMUS {¶ 19} Relator, Edward Steele, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to PTD compensation pursuant to Stateex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. In the alternative, relator requests the commission be ordered to vacate its order and to issue a new order which complies with State exrel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
Findings of Fact:
 {¶ 20} 1. Relator sustained a work-related injury on March 22, 2002, and his claim has been allowed for:
Left and right scapula fracture; fungal candiasis and fungal skin infection dermatomycoses; bilateral glenohumeral osteoarthritis of the shoulders and post concussion syndrome; right rotator cuff syndrome/tendonitis.
 {¶ 21} 2. Relator has not worked since the date of the injury.
 {¶ 22} 3. On May 23, 2003, relator filed an application for PTD compensation supported by the May 12, 2003 report of his treating physician, Dr. Thomas A. Carothers, who opined as follows:
I have treated Mr. Edward Steele since March 23, 2002, for bilateral comminuted scapular fractures resulting from a fall off a loading dock. These fractures were treated non-operatively. Mr. Steele was put through an extensive course of physical therapy, but has gained very limited functional use of the upper extremities. He also has findings of significant osteoarthritis of the right shoulder which in all probability was aggravated by the work injury.
It is my professional opinion Mr. Steele is permanently and totally disabled from engaging in remunerative employment.
 {¶ 23} Dr. Carothers also completed a supplemental statement on December 17, 2002, indicating that relator's current functional ability during the course of an eight-hour work day would include sedentary activity defined as follows: "10 lbs. maximum lifting or carrying articles. Walking/standing on occasion. Sitting 6/8 hours."
 {¶ 24} 4. On August 13, 2003, relator was examined by Dr. Paul T. Hogya, who noted the following upon physical examination:
He has a high riding left scapula with some associated muscle guarding. There is some accentuated kyphosis. He has limited range of motion of both shoulders resisting motion in flexion and abduction beyond 60 degrees due to "sharp pain." Extension is limited to 10 degrees; external rotation 60 degrees; internal rotation 50 degrees; 10 degrees of adduction on the left and 30 degrees on the right. There is some give-way response on cuff testing due to pain. The biceps strength is normal with a negative Speed's sign. The biceps, triceps and brachioradialis reflexes are normal and symmetric. He has no sensory loss to vibration along any dermatome. He is able to oppose a thumb to the index and little fingers with normal pincer strength. He has adequate grip. There is full mobility of the wrists. He does have inflammation to the axilla consistent with his fungal dermatitis.
 {¶ 25} Dr. Hogya opined that relator had reached maximum medical improvement ("MMI") and that he has significant limitations with regard to the use of his upper extremities; however, Dr. Hogya opined that those restrictions would not preclude his participation in some reasonable remunerative employment with restrictions. Specifically, Dr. Hogya indicated the following restrictions:
The claimant will have significant restrictions. He will not be able to do any overhead reaching or lifting. He still has excellent biceps strength, allowing him to do some light lifting less than ten pounds close to his body. He will also be able to work at a work station such as assembling light parts less than five pounds. He maintains adequate fine manipulation to allow him to do that. He could also participate in activities such as dispatching, using a head set or speaker phone. He has no limitations with regard to sitting, standing or walking as it relates to the allowed conditions. He is capable of squatting. He will not be able to handle objects greater than shoulder width as abduction of the shoulders is limited.
 {¶ 26} 5. A medical examination was also performed on September 2, 2003, by Dr. James T. Lutz. After noting his physical findings, Dr. Lutz stated as follows:
* * * Edward Steele sustained an industrial injury on 3/22/02 those claim allowances are noted above. He has undergone no surgical procedures related to this injury. A review of an estimated functional abilities form completed by Dr. Carothers on 12/27/02 indicates the claimant was capable of frequently lifting up to 10-pounds and occasionally lifting up to 20-pounds, and was able to perform activities with both hands including simple grasp, fine manipulation, and medium dexterity. Other disability factors include his age of 60, his last date of work being on 3/22/02 (the date of injury), and a twelfth grade education.
 {¶ 27} Dr. Lutz opined that relator had reached MMI, assessed a 39 percent whole person impairment and indicated, on a physical strength rating form, that relator was capable of performing sedentary work provided that there was "no repetitive use of the upper extremities and no reaching over chest height."
 {¶ 28} 6. An employability assessment was prepared by J. Michael Shane, M.A., C.D.M.S., dated October 1, 2003. Based upon the report of Dr. Carothers, Mr. Shane opined that relator was not employable. However, based upon the reports of Drs. Lutz and Hogya, Mr. Shane indicated that relator could perform the following jobs:
Rag inspector, high density press laborer, filter machine tender, offset press operator II, filling machine operator, strip cutting machine operator, blow molding machine operator, box lining machine feeder, automatic nailing machine feeder.
 {¶ 29} Mr. Shane noted that relator was a high school graduate and that his education would present no barriers to meeting the basic demands of entry-level occupations. Mr. Shane opined that relator would benefit from a community based older worker placement program that works with employers willing to hire older workers with limitations given that he has not worked in the past ten years. Mr. Shane also noted that the jobs he listed are all classified as sedentary and should not require overhead work.
 {¶ 30} 7. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on February 17, 2004, and resulted in an order denying the application. The commission relied upon the medical reports of Drs. Lutz and Hogya as well as the estimated functional abilities form completed by Dr. Carothers and the vocational report of Mr. Shane. With regard to relator's physical abilities, the commission noted as follows:
The Staff Hearing Officer finds that the injured worker is capable of performing sedentary work based upon the opinions of Dr. Lutz and Dr. Hogya with the additional restrictions that he avoid repetitive use of the upper extremities and avoid over chest height reaching. The Staff Hearing Officer finds that the physical capabilities form completed by Dr. Carothers is consistent with the injured worker's ability to perform such sedentary employment.
 {¶ 31} After adopting Mr. Shane's vocational analysis, the commission noted further as follows in its own analysis of the nonmedical disability factors:
The Staff Hearing Officer finds that the injured worker is 60 years old, has a high school education, and work experience as a truck driver. The Staff Hearing Officer finds that the injured worker's age would not affect his ability to meet the basic demands of entry-level occupations. The Staff Hearing Officer further finds that the injured worker's age would provide limitations in participating in formal academic remediation programs. However, it would not prevent him from adapting to new work rules, processes, methods, procedures, and tools involved in a new occupation.
The Staff Hearing Officer further finds that the injured worker's education is not a barrier which would impact on his ability to meet the basic demands of entry-level occupations. The Staff Hearing Officer further finds that the injured worker's work history did not provide him with transferable work skills to other occupations. However, the Staff Hearing Officer finds that the work history, in and of itself, would not prevent him from meeting the demands of entry-level occupations.
Considering the injured worker's age, occupation and work experience in conjunction with his ability to perform restricted sedentary employment, the Staff Hearing Officer finds that the injured worker would be able to perform the occupations noted in the vocational report of Mr. Shane, such as: rag inspector, high density press laborer, filter machine tender, offset press operator II, filling machine operator, strip cutting machine operator, blow molding machine operator, box lining machine feeder, and automatic nailing machine feeder.
Accordingly, the Staff Hearing Officer denies the injured worker's application for Permanent and Total Disability Compensation.
This order is based upon the medical reports of Dr. Lutz and Dr. Hogya, the estimated functional abilities form completed by Dr. Carothers, and the vocational report of Mr. Shane.
 {¶ 32} 8. Relator's request for reconsideration was denied by order mailed April 14, 2004.
 {¶ 33} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 34} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 35} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 36} In this mandamus action, relator sets out five separate arguments; however, those arguments can be condensed into two issues: (1) the commission abused its discretion by finding that relator was capable of performing sedentary work when the medical evidence relied upon by the commission indicates that relator would be capable of performing something less than sedentary work; and (2) the commission abused its discretion by relying upon a vocational report, not only to justify denying PTD compensation, but which lists specific jobs which are outside of relator's restrictions. For the reasons that follow, this magistrate rejects relator's arguments.
 {¶ 37} Sedentary work is defined in Ohio Adm. Code4121-3-34(B)(2)(a) as follows:
"Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 {¶ 38} Relator is correct in asserting that, if an injured worker is medically incapable of performing some sustained remunerative employment due to physical restrictions, then that injured worker would qualify for PTD compensation, without a review of the vocational disability factors. However, relator is not correct in asserting that the facts of this case warrant the finding that he is physically incapable of performing at a sedentary level. Relator cites this court's decision in State exrel. Libecap v. Indus. Comm. (Sept. 23, 1998), Franklin App. No. 96APD01-29, affirmed in State ex rel. Libecap v. Indus. Comm.
(1998), 83 Ohio St.3d 178, in support. In Libecap, the commission had found that the claimant was capable of performing sedentary work even though the medical evidence relied upon by the commission indicated that the claimant would not be able to lift more than five or ten pounds and would have difficulty in any occupation that would involve sitting or standing for more than 30 minutes. Specifically pointing out that sedentary work involves sitting most of the time, this court found that it was an abuse of discretion to consider Dr. Littlefield's limitations as being consistent with sedentary work as defined in the administrative code or with the general definition of sedentary work utilized before Ohio Adm. Code 4121-3-34(B)(2)(a) became effective.
 {¶ 39} In the present case, the medical evidence relied upon by the commission in finding that claimant could perform sedentary work indicates that, while the claimant cannot lift weight above chest height, he can lift up to ten pounds close to his body and up to five pounds with his hands extended away from his body. Relator only has to be able to exert this force occasionally. Relator asserts that, by his reading of the administrative code, the definition of sedentary work requires the capacity for repetitive use of his arms; however, this magistrate disagrees.
 {¶ 40} While the administrative code sets out lifting requirements, it makes no other mention of one's ability to use one's arms or, in this case, upper extremities. While Dr. Hogya noted that relator claimed he needed help dressing and bathing, Dr. Hogya also indicated that, in terms of hand/arm motion, relator could perform tasks such as "assembling light parts less than five pounds." Relator seemingly argues that he cannot use his arms at all and yet he does crossword puzzles and apparently feeds himself. Relator's argument simply fails.
 {¶ 41} Relator also contends that the commission abused its discretion by relying on the opinions of the vocational evaluator to justify PTD compensation. Relator raises two issues here: (1) the commission never should have considered Mr. Shane's vocational report because relator is incapable, from a medical standpoint, of performing any work; and (2) the commission blindly relied upon Mr. Shane's assertion that relator could perform the jobs listed in the vocational report. Relator's first argument fails as the magistrate has concluded that there is some evidence in the record to support the commission's finding that relator can perform at a sedentary work level. With regard to relator's second argument, relator argues that certain of the jobs listed by Mr. Shane will require repetitive use of his upper extremities. However, upon review of the medical evidence, Dr. Hogya himself indicated that relator would be able to sit at a work station assembling light parts less than five pounds as he maintains adequate fine manipulation to allow him to do so. The medical evidence clearly indicates that relator's restrictions involve his shoulders and not his entire arm. As such, provided that the movements were below chest height, there is no restriction, from a medical standpoint, on the relator that would preclude him from performing those activities. Relator has presented no evidence to support his assertion that it is clear that relator cannot perform those jobs. As such, inasmuch as the commission is the evaluator of the disability factors and is the expert therein, this magistrate finds that relator has not demonstrated that the commission abused its discretion in relying upon the vocational report of Mr. Shane and agreeing that relator could perform some of the jobs listed by Mr. Shane. As such, this magistrate finds that relator's second argument fails as well.
 {¶ 42} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.
[1] In his report of August 13, 2003, Dr. Hogya opined: "In my opinion, the medical evidence does not support the claimant to be permanently and totally disabled due to the above allowed conditions [right and left fracture of scapulae, fungal candiasis, fungal skin infection (dermatomycoses) and bilateral glenohumeral osteoarthrities of the shoulders]. He has significant limitations with regard to the use of the upper extremities, but it does not preclude his ability to participate in some reasonable remunerative employment with associated accommodations." Id.