[Cite as *Le v. Ohio Indus. Comm.*, 2021-Ohio-1169.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Cuong Le, | : | |
| Relator, | : | |
| v. | : | No. 19AP-404 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on April 6, 2021

**On brief:** *Gruhin & Gruhin, LLC*, and *Michael H. Gruhin,* for relator.

**On brief:** *Dave Yost*, Attorney General, *Lauren A. Kemp*, for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Cuong Le, brings this original action seeking a writ of mandamus ordering respondent the Industrial Commission of Ohio ("commission") to vacate its order denying relator's application for permanent total disability ("PTD") benefits and enter an order granting such benefits.

{¶ 2} This court referred this matter to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate considered the action on its merits and issued a decision that includes findings of fact and conclusions of law, which is appended hereto. The magistrate determined that the commission did not

abuse its discretion in denying relator's application for PTD benefits and has recommended that this court deny the request for a writ of mandamus.

{¶ 3} Relator has filed the following objection to the magistrate's decision:

> The Magistrate erred when he concluded that the ICO staff hearing officer's consideration of the *Stephenson factors* was supported by "some evidence" to support denial of Relator's PTD application.

{¶ 4} Because relator has filed an objection, we must independently review the record and the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

{¶ 5} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.* 11 Ohio St.2d 141 (1967). "A clear legal right to a writ of mandamus exists when the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record." *State ex rel. Metz v. GTC, Inc.*, 142 Ohio St.3d 359, 2015-Ohio-1348, ¶ 11, citing *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). The court will not disturb the commission's decision if there is "some evidence" to support it. *State ex rel. Fiber-Lite Corp. v. Indus. Comm.*, 36 Ohio St.3d 202 (1988); *State ex rel. Bennett v. Aldi, Inc.*, 10th Dist. No. 14AP-632, 2016-Ohio-83, ¶ 6. " 'Where a commission order is adequately explained and based on some evidence[,] * * * the order will not be disturbed as manifesting an abuse of discretion.' " *State ex rel. Avalon Precision Casting Co. v. Indus. Comm.*, 109 Ohio St.3d 237, 2006-Ohio-2287, ¶ 9, quoting *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584 (1997). Thus, as long as some evidence supports the commission's decision, this court must defer to the commission.

{¶ 6} The relevant inquiry in a determination of PTD is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record, and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 7} In making its determination, the resolution of disputed facts is within the final jurisdiction of the commission. *State ex rel. Allerton v. Indus. Comm.*, 69 Ohio St.2d 396, 397 (1982). The commission may accept all, none, or any portion of an expert's report and is not required to give special weight or conclusive weight to any particular vocational or medical report. *State ex rel. Ellis v. McGraw Edison Co.*, 66 Ohio St.3d 92 (1993). Indeed, the Supreme Court of Ohio has instructed:

> Reviewing courts must not micromanage the commission as it carries out the business of compensating for industrial/occupational injuries and illness. The commission is the exclusive evaluator of evidentiary weight and disability. Moreover, review of a commission order in mandamus is not de novo, and courts must defer to the commission's expertise in evaluating disability, not substitute their judgment for the commission's. Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion.

*State ex rel. Steele v. Indus. Comm., et al.*, 10th Dist. No. 04AP-606, 2005-Ohio-4125, ¶ 7, quoting *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584 (1997) (Citations omitted.).

{¶ 8} Relator's objection essentially presents the same arguments he made to the magistrate. Relator contends that the commission ignored evidence of his vocational limitations and that the decision of the commission denying his application for PTD benefits is inconsistent with both the Employability Assessment Report of Mark Anderson and the report of Maria Armstrong-Murphy, M.D., regarding relator's extent of disability. However, we find that the magistrate properly determined that because there is some evidence in the record to support the commission's denial of relator's application for PTD benefits, he is not entitled to mandamus relief. Specifically, the magistrate correctly found the commission's examination of non-medical factors is supported by "some evidence" upon which the commission properly relied in denying relator's application because the staff hearing officer's ("SHO") report independently assessed relator's age, work history, transferable skills, lack of education beyond the sixth grade, and language deficit and identified these factors as either positive, negative, or neutral. The record clearly shows the SHO properly considered these non-medical factors and concluded that, on balance, they did not support relator's claim for PTD benefits.

{¶ 9} Furthermore, the SHO's order specifically states that in reaching the decision that relator is capable of remunerative employment at the sedentary level as a manicurist, his former occupation, the SHO relied upon Dr. Kaffen's report, relator's testimony, and the fact that Dr. Armstrong-Murphy previously released relator to return to his former occupation. This is consistent with Dr. Armstrong-Murphy's report wherein she noted relator "could work with restrictions since he was released back to work as a manicurist"

despite that he was not "fit to return to return to work as a carpenter since 1998 and is unlikely to do so." (Stip. at 3-6, 169-74.)

{¶ 10} We reject relator's contention that this court must "re-visit" certain alleged inconsistencies within Dr. Armstrong-Murphy's report that might indicate that relator is not capable of working as a manicurist, and we likewise reject relator's contention that the SHO improperly ignored the report of Mark Anderson. As set forth previously, it is well-settled the commission may accept all, none, or any portion of an expert's report and is not required to give special weight or conclusive weight to any particular vocational or medical report. *State ex rel. Ellis v. McGraw Edison Co.*, 66 Ohio St.3d 92 (1993). Although relator may disagree with the conclusion of the SHO in this case, because the record shows that there was "some evidence" to support the commission's denial of relator's application, this court must defer to the determination of the commission.

{¶ 11} For all these reasons, we overrule relator's sole objection. Having conducted an examination of the magistrate's decision and an independent review of the evidence pursuant to Civ.R. 53, we find the magistrate properly applied the relevant law to the salient facts in reaching the conclusion that relator is not entitled to a writ of mandamus. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

DORRIAN, P.J., and SADLER, J., concur.

## **APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Cuong Le, | : | |
| Relator, | : | |
| v. | : | No. 19AP-404 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on December 9, 2020

*Gruhin & Gruhin, LLC*, and *Michael H. Gruhin,* for relator.

*Dave Yost*, Attorney General, *Lauren A. Kemp*, for respondent.

IN MANDAMUS

{¶ 12} Relator, Cuong Le, brings this original action seeking a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's application for permanent total disability ("PTD") benefits and enter an order granting such benefits.

Findings of Fact:

{¶ 13} 1. Relator was injured on December 24, 1998 in the course and scope of his employment with respondent Interior Products Company where he worked as a cabinet maker.

{¶ 14}  2. Relator's claim was allowed for closed fracture right radius with ulna and right carpal tunnel syndrome. (Stip. at 3.)

{¶ 15}  3. After leaving his work as a cabinet maker due to the injury, relator worked intermittently for approximately 15 years as a manicurist after undertaking additional training in this profession.

{¶ 16}  4. After a hearing before a district hearing officer ("DHO") on October 3, 2016, the DHO awarded temporary total disability ("TTD") benefits beginning on August 18, 2016 and continuing through and after the date of the hearing. The DHO noted as follows:

> This order is based on support, causation and proof of disability from Todd Hochman, M.D., dated 08/09/2016 and 09/04/2016, Joshua Goldner, M.D., dated 08/15/2016, and Injured Worker's testimony that he was no longer able to continue to keep on working because of increasing symptomatology in his right hand, without having another injury.

(Stip. at 167.)

{¶ 17}  5. The Ohio Bureau of Worker's Compensation ("BWC") scheduled relator for an independent medical examination by Dr. Maria Armstrong-Murphy to determine the extent of disability. Dr. Armstrong-Murphy opined that relator had reached maximum medical improvement ("MMI") as of the July 10, 2017 examination date. (Stip. at 170.) Dr. Armstrong-Murphy further opined as follows:

> He has not been fit to return to work as a carpenter since 1998 and is unlikely to do so.
>
> * * *
>
> He did work for 7 or 8 years after 1998, his date of injury, but this was not in his job. It was as a manicurist. He has not been able to return since that time.

* * *

> Claimant could work with restrictions since he was released back to work as a manicurist. He has been taken back off of work and has yet to find work within his restriction lines.

(Stip. at 171.)

{¶ 18} 6. Relator pursued participation in BWC's vocational rehabilitation program in August 2017. BWC's initial assessment determined that relator was not a feasible candidate for rehabilitation because of his lack of transferable skills, significant physical restrictions, and low language skills, computer skills, and basic adult education. The case was closed in October 2017, and relator's appeals of the vocational rehabilitation closure were rejected. (Stip. at 109-118.)

{¶ 19} 7. An evaluation conducted by Melanie Frye, MRC, CRC on September 29, 2017 during the BWC's vocational assessment yielded the following report:

> Mr. Cuong Le's overall vocational feasibility, given his past work experience, transferable skills, physical restrictions, vocational aptitudes, interests and vocational readiness is very low. The IW has no identified transferable occupations given his current restrictions and is unable to return to his past employment due to his documented restrictions. * * *While Mr. Le was cooperative throughout testing, he demonstrated very low vocational aptitudes. The IW required an interpreter throughout the evaluation * * * and had difficulty communicating effectively * * *. Overall, the IW's Adult Basic Education level fell at the first grade, third month which is below competitive level of employment.
>
> Mr. Cuong Le can no longer vocationally perform past work due to the physical demands, has no transferable skills, and has no basis for direct entry into alternative skilled employment given his light physical demand level restrictions. Mr. Le has no recorded computer skills and given his demonstrated aptitudes is not a strong candidate for computer training or any alternative technical training. * * * *In consideration of these factors, it is with a high degree of vocational certainty that Mr. Le is not a feasible candidate for vocational rehabilitation or competitive employment at this time.*

(Emphasis sic.) (Stip. at 130.)

{¶ 20} 8. On June 12, 2018, relator filed his application for PTD compensation.

{¶ 21} 9. Relator supported his PTD application with a report from Dr. James O'Reilly, dated April 25, 2018. Relator also submitted office notes from his treating physician, Todd S. Hochman.

{¶ 22} 10. The commission obtained an examination of relator by Dr. Sheldon Kaffen. Dr. Kaffen's report described relator's original injury, subsequent surgery for placement of a plate and screws in his forearm, subsequent removal of the plate through further surgery, and carpel tunnel relief surgery in January 2009. Relator complained of constant pain in his right wrist and hand, limitation of motion, inability to grasp and hold objects for more than ten minutes, inability to lift more than one or two pounds with his right hand, and sleep disturbance resulting from pain.

{¶ 23} 11. Dr. Kaffen's examination yielded the following observations and conclusions:

> PHYSICAL EXAMINATION:
>
> Examination of the right upper extremity reveals the presence of a 5 inch scar on the volar distal aspect of the right forearm. In addition, there was a 2 inch scar on the ulnar aspect of the distal forearm. The left forearm measured 10 inches in circumference whereas the right measured 9.75 inches at the same level. The range of motion of the right wrist was 60 degrees of dorsiflexion, 60 degrees of palmar flexion, radial deviation to 10 degrees and ulnar deviation to 30 degrees. There were no complaints of pain on range of motion. There was no discoloration of the right forearm, wrist and hand.
>
> On examination of the right hand, there was no thenar atrophy. There was no tenderness. The Tinel's sign, wrist compression test and Phalen's tests at the wrist were negative.

Examination of the right elbow revealed no swelling or tenderness. There was a full range of motion without pain. There was a full range of motion of the thumb, index, middle, ring and little fingers without pain. There were findings of dysesthesia to light touch in the thumb, index and middle fingers on the volar aspect. Grip strength was slightly weaker on the right than the left.

REVIEW OF MEDICAL RECORDS:

I have reviewed all medical records provided by the Industrial Commission of Ohio.

CONCLUSIONS

The following conclusions are rendered within a reasonable degree of medical certainty and probability and are based on the history, physical examination and review of medical records.

1. If you believe the injured worker is still at MMI, based on the AMA Guides, Fifth Edition, and with reference to the Industrial Commission Medical Examination Manual, provide the estimated percentage of whole person impairment arising from each allowed condition.  Please let each condition and whole person impairment arising from each allowed condition[s] separately, and then provide a combined whole person impairment.  If there is no impairment for an allowed condition indicate zero (0) percent.

Answer: IMPAIRMENT EVALUTION: (Reference AMA Guides to the Evaluation of Permanent Impairment, 5th Edition)

I:  RIGHT WRIST: (Closed fracture right radius with ulna, right carpal tunnel syndrome)

A. Impairments of the upper extremity due to abnormal motion:

1. Flexion to 60 degrees            = 0%
2. Extension to 0 degrees           = 0% (pg. 467, figure 16-28)
3. Ulnar deviation to 20 degrees  = 2%
4. Radial deviation to 10 degrees = 4% (pg. 469, figure 16-31)

6% upper extremity impairment – 4% whole person impairment (pg. 439, table 16-3)

B. Determining impairment of the upper extremity due to sensory deficits or pain resulting from peripheral nerve disorders (pg. 482, table 16-2)

1. Grade 4 = 5%
2. Maximum upper extremity impairment of the median nerve below mid forearm = 39% (pg. 492, table 16-15)

39% x 5% = 1.95% = 2% upper extremity impairment
2% upper extremity impairment = 1% whole person impairment (pg. 439, table 16-3)
4% + 1% = 5% whole person impairment (pg. 604 Combined Values Chart)

3. If you believe the injured worker is still at MMI complete the enclosed Physical Strength rating. In your narrative report provide a discussion setting forth physical limitations resulting from the allowed conditions.

Answer: The claimant's restrictions consist of maximum lifting, pushing, pulling of no more than 10 pounds occasionally or gripping of objects of more than 2 pounds with his right hand. The claimant is able to sit and stand occasionally. He has no limitations for walking or standing.

(Stip. at 20-21.)

{¶ 24} 12. Relator's PTD application was heard before a staff hearing officer ("SHO") on December 5, 2018.

{¶ 25} 13. By order mailed December 13, 2018, the SHO issued an order denying relator's PTD application and finding that relator was "capable of sustained remunerative employment at the sedentary level as a manicurist, his former occupation." In contrast, the SHO concluded that relator was not capable of returning to work as a cabinet maker.

{¶ 26} 14. Regarding non-medical factors, the SHO noted that relator was 52 years old at the time of hearing, appeared in good health, and looked younger than his stated age. The SHO therefore concluded that relator's age was a positive factor. The SHO noted that relator testified that he had not finished the sixth grade in Vietnam before immigrating and

never furthered his education in the United States. Relator testified that he was illiterate in English, his second language, which he spoke and understood very poorly. The SHO nonetheless noted that relator was able to anticipate questions without waiting for translation and did otherwise demonstrate some English skills, and that relator's limited command of English had not prevented employment as a cabinet maker and manicurist. The SHO concluded that relator's language deficit was neither a negative nor a positive factor, unlike relator's lack of education which was a negative vocational factor. The SHO finally concluded that relator's work history supported either resumption of work as a manicurist or a transition to another sedentary job.

> 15. Addressing the medical factors, the SHO wrote as follows: The Staff Hearing Officer relied on the 08/22/2018 Industrial Commission specialist report of Sheldon Kaffen, M.D. in a report date 09/04/2018 and filed 09/10/2018. Dr. Kaffen indicates that the Injured Worker has reached a level of maximum medical improvement for his allowed conditions noted above and rates his whole person impairment at only 5%. Dr. Kaffen states that the Injured Worker's restrictions consist[] of sedentary work and his restriction includes a maximum lifting, pushing, pulling of no more than 10 pounds occasionally or gripping of objects no more than two pounds with is right hand. He is able to sit or stand occasionally. These restrictions support Dr. Kaffen's conclusion that the Injured Worker is capable of mid[-]range of sedentary work but not able to return to his former work as a cabinet maker because the restrictions are beyond the physical requirements of the job.
>
> As the medical evidence relied upon confirms that the Injured Worker is able to return to work in the sedentary level based on a report of Dr. Kaffen, it is necessary as a matter of law to consider vocational factors and whether or not they render the Injured Worker permanently and totally disabled. The Staff Hearing Officer finds that the Injured Worker is not able to return to his former position of employment as a cabinet maker as these are beyond his medical restrictions as noted above.

(Stip. at 4.)

16. The SHO's order concludes as follows:

In conclusion, the Hearing Officer relied on the medical report of Dr. Kaffen with the medical restrictions and the positive vocational factors of age, work experience and transferrable skills into denying the application for permanent total disability compensation due to the fact that the Injured Worker is capable of sustained remunerative employment at the sedentary level as a manicurist, his former occupation. This release to return to his former occupation by Dr. Murphy relieves the Bureau of Workers Compensation and the Industrial Commission from having to provide vocational rehabilitation services. The Hearing Officer relied on Dr. Kaffen's report as well as the Injured Worker's testimony as noted above.

Finally, the Hearing Officer dismisses the Injured Worker's representative's argument that Dr. Kaffen's report is equivocal and shall be excluded. The Hearing Officer finds that while Dr. Kaffen's report is not perfect, it is sufficiently accurate and persuasive and has no material mistakes of fact that has rendered the opinion equivocal.

(Stip. at 5.)

{¶ 27} 17. Relator filed for reconsideration before the commission, which was refused.

{¶ 28} 18. Relator filed his complaint in mandamus with this court on June 26, 2019.

Discussion and Conclusions of Law:

{¶ 29} Relator primarily challenges the SHO's reliance on the report of Dr. Kaffen. Relator also asserts that the SHO ignored evidence of relator's vocational limitations, including the commission's prior determination on that question.

{¶ 30} To be entitled to relief in mandamus, relator must establish that he has a clear legal right to relief, that the commission has a clear legal duty to provide such relief, and that relator has no plain and adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983). To do this, relator must demonstrate that

the commission abused its discretion and, "in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it." *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20 (1987); *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). The determination of disputed facts is within the final jurisdiction of the commission. *State ex rel. Allerton v. Indus. Comm.*, 69 Ohio St.2d 396, 397 (1982).

{¶ 31} The magistrate concludes that there is some evidence to support the commission's denial of relator's PTD application. The SHO's order relied primarily for physical factors on the report of Dr. Kaffen, who examined relator and reached the conclusion that relator was capable of sedentary work with limitations. Dr. Kaffen's report is internally consistent, and presents a consistent analysis of relator's physical limitations and capability, leading to a conclusion that follows from the observed conditions.

{¶ 32} The SHO's examination of non-medical factors under *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987), is also supported by some evidence. The SHO's report assesses relator's age, work history, transferable skills, and assigns these as positive, negative, or neutral factors in a manner that is consistent with prior conclusions.

{¶ 33} The fact that Dr. Kaffen's report is not entirely consistent with the previous employability assessment reports that resulted in the closure of vocational services in 2017 is not sufficient to disregard Dr. Kaffen's report or set aside the commission's order. The SHO independently analyzed the *Stephenson* factors, considered all obstacles to employment outlined in the previous determination on vocational services, and reached a

conclusion supported by some evidence in the form of relator's personal work history and the SHO's assessment of relator's education and other factors. The SHO noted that relator had received treatment and surgery after his return to work as a manicurist and had again returned to work. The commission may accept all, none, or any portion of an expert's report and is not required to give special weight or conclusive weight to any particular vocational or medical report. *State ex rel. Ellis v. McGraw Edison Co.*, 66 Ohio St.3d 92 (1993). The SHO's order notes that Dr. Armstrong-Murphy's report did not release relator to return to work as a cabinet maker but released him to work as a manicurist. (Stip at 3-6, 169-74.)

{¶ 34} Finally, relator asserts that Dr. Kaffen's report should not be relied upon due to the absence of a professional translator. Relator, however, does not articulate any specific aspect of the report that was materially affected or limited by the absence of a professional translator, and relator was accompanied by a relative to serve as a translator in the examination.

{¶ 35} It is therefore the magistrate's conclusion that the commission's order denying relator's PTD application is supported by some evidence and that the commission did not abuse its discretion in denying the application. It is the magistrate's decision and recommendation that the requested writ of mandamus be denied.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

> Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).